# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

---

In re:                                                                Bky No. 09-50779

Dennis E. Hecker,                                         Chapter 7

         Debtor.

---

Randall L. Seaver, Trustee,

                                                                  Adv. No. 10-5022

         Plaintiff,

vs.                                        **DEFENDANTS CORNERSTONE BANK AND CORNERSTONE HOLDING COMPANY, INC.'S NOTICE OF HEARING AND MOTION TO DISMISS**

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

         Defendants.

---

TO: The debtor and other entities specified in Local Rule 9013-3.

        1.      Defendants Cornerstone Bank ("CB") and Cornerstone Holding Company, Inc. ("CHC") (collectively, "Cornerstone") moves the Court for an order dismissing Plaintiff Randall L. Seaver's ("Trustee") complaint (the "Complaint") with prejudice and gives notice of the hearing on its motion.

        2.      The Court will hold a hearing on this motion on August 18, 2010, at 2:00 pm. before the Honorable Robert J. Kressel, United States Bankruptcy Court, Courtroom 8 West, 300 South Fourth Street, Minneapolis, Minnesota 55415.

1

3. Any response to this motion must be filed and served not later than August 13, 2010, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this Chapter 7 case was filed on June 4, 2009. The case is now pending in this court.

5. This motion arises under Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and Rules 7008(a), 7009, and 7012(b) of the Federal Rules of Bankruptcy Procedure.

6. Cornerstone moves to dismiss the Complaint against it on the following grounds:

    a. The Complaint fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b);

    b. Plaintiff has failed to state with particularity the circumstances constituting fraud and fraudulent transfers, *see* Fed. R. Civ. P. 9(b) and Fed. R. Bankr. P. 7009; and

    c. Plaintiff has failed to make a plausible showing that it is entitled to relief, *see* Fed. R. Civ. P. 8(a)(2) and Fed. R. Bankr. P. 7008(a).

7. This motion is based on all the Complaint and the attached memorandum of law.

WHEREFORE, Cornerstone moves the Court for an order dismissing the Complaint against it and such other relief as may be just and equitable.

Dated: <u>July 21, 2010</u>　　　　　　　　　　MACKALL, CROUNSE & MOORE, PLC


By <u> /e/ Andrew P. Moratzka   </u>
Andrew P. Moratzka (#322131)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, MN 55402
(612) 305-1400

ATTORNEYS FOR DEFENDANT
CORNERSTONE BANK &
CORNERSTONE HOLDING COMPANY, INC.


1266121.2-APM

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

___

In re:                                                                                 Bky No. 09-50779

Dennis E. Hecker,                                                Chapter 7

         Debtor.

___

Randall L. Seaver, Trustee,

                                                                                          Adv. No. 10-5022

         Plaintiff,

vs.                                           **DEFENDANTS CORNERSTONE BANK AND CORNERSTONE HOLDING COMPANY, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

         Defendants.

___

## I.     INTRODUCTION

The Federal Rules of Bankruptcy Procedure require a complaint to contain a short and plain statement of the claim justifying relief. Dismissal is appropriate when the allegations in the complaint fail to state a claim that is plausible on its face. Here, the plaintiff is seeking to avoid transfers of non-debtors outside the applicable look-back period. The Bankruptcy Code does not provide the plaintiff with the authority to avoid such transfers. This court should therefore dismiss the claims against Cornerstone Bank and Cornerstone Holding Company, Inc.

## II.     FACTS

Randall Seaver, Chapter 7 bankruptcy trustee (the "Trustee") for Dennis E. Hecker

1

("Debtor") commenced this action on June 21, 2010, by filing a complaint with this court seeking to avoid certain transfers (the "Complaint"). The Complaint contains allegations that certain pre-petition transfers to Cornerstone Bank ("CB") and Cornerstone Holding Company, Inc. ("CHC"), were preferential and/or fraudulent, which the Trustee asserts justify the equitable subordination or disallowance of CB's and CHC's claims. The fundamental deficiency with these allegations is that they are based on transfers of borrowers that are foreign to this adversary proceeding and bankruptcy case.

Even the loans cited are to non-debtor entities. Of the five loans the Complaint references as part of this adversary proceeding, only one was to Debtor personally, and that loan was paid in full over seven months prior to Debtor's bankruptcy filing.[1] As pleaded in the Complaint, the four remaining loans were for legitimate business purposes.

Toward the end of 2008, these four loans required additional security. CB worked with the Debtor and these entities to collateralize certain obligations, which negotiations occurred four to seven months prior to Debtor's bankruptcy filing.[2] The Trustee asserts the granting of additional security constitutes avoidable transfer(s).

The particular transfers the Trustee complains of include the following (the "Transfers"):

- Security interest in entities in which Debtor was involved in January 2009;
- A mortgage granted by Jacobs Properties of Rogers, LLC, as mortgagor;
- A mortgage granted by H & H Realty of Delano, LLC, as mortgagor;
- A security interest in the business assets of Rosedale Dodge, Inc.;
- Partial repayment of DEH Funding, LLC's, obligation to CB;

---

[1] *The Complaint*, ¶¶ 28, 33, 36, 41, 46, 51.
[2] *The Complaint*, ¶ 119.

- Payment in October of 2008 on an unspecified obligation;

- Payment in November 2008 of what appear to be obligations of corporate entities; and

- A security interest in Debtor's assets.[3]

On its face, the Complaint demonstrates the majority of the Transfers were from non-debtor entities. Counts I, IV, and VI should therefore be dismissed.

The Trustee bases his ability to utilize a one-year look back for the preference claim and Minnesota state law violation by alleging CB was an insider of the Debtor, as that term is defined in the Bankruptcy Code and under State law.[4] As evidence of this claimed "insider status," the Trustee cites a number of factors that only serve to demonstrate (i) a business friendship between a couple of the members of CB's Board of Directors and the Debtor; and (ii) the Debtor's existing obligation to CB.[5] The analysis below demonstrates CB is not an "insider" of the Debtor and the transfers were not a "transfer of the interest of the Debtor." Counts I and IV of the Complaint therefore fail to state a plausible claim on its face and should be dismissed. The equitable relief the Trustee seeks against CB and CHC under Counts VII, VIII, and IX is equally faulty and should be dismissed.

### III. ANALYSIS

#### A. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to set forth a "short plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2); FED.R.BANKR.P. 7008. A complaint failing to detail facts and law plausible on its face

---

[3] *The Complaint*, ¶ 119.
[4] *The Complaint*, ¶ 121.
[5] *The Complaint*, ¶ 121.

may be dismissed. FED.R.CIV.P. 12(b)(6); FED.R.BANKR.P. 7012. Case law on these rules has developed significantly in the past couple of years, most notably in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

These decisions from the Supreme Court were recently incorporated into a decision from the United States Bankruptcy Appellate Panel of the Eighth Circuit ("B.A.P."). *GAF Holdings, Inc. v. Rinaldi et al. (In re Farmland Indus., Inc.)*, 408 B.R. 497 (B.A.P. 8th Cir. 2009). In *GAF Holdings*, the subjects of dispute were claims of conspiracy and tortuous interference with business expectancy. *Id*. at 502. These claims were dismissed. Addressing the pleading standard under Rules 8 and 12 of the Federal Rules of Civil Procedure, the B.A.P. stated

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely inconsistent with" a defendant's liability, it stops short of the line of 'entitlement to relief.'

*GAF Holdings*, 408 B.R at 503; quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556-57, 570). Although it accepted the general notion that well pleaded facts are accepted as true, the B.A.P. stated that doctrine is inapplicable to legal conclusions. *GAF Holdings* 408 B.R. at 503 (citations omitted). The B.A.P. then went on to review the complaint under the applicable state law, ultimately affirming the dismissal of the conspiracy and tortuous interference claims. *Id*. at 504-05.

Here, the Trustee alleges that (i) the Transfers were transfers of an interest of the debtor and (ii) that CB in an insider of the Debtor. These assertions are implausible. A majority of the Transfers complained of in the Complaint were from a non-debtor. Even if it could be found that

4

the transfers were of an interest of the Debtor, the Trustee's claim that CB is an insider of the Debtor should be rejected. An insider must be more than a friend or someone owed money – there must be control. The Trustee's claims against CB and CHC should be dismissed based on the detailed analysis below.

   B. **Counts I, IV, and VI of the Complaint Should Be Dismissed Because the Transfers Were Not Transfers of an Interest of the Debtor in Property.**

The Complaint seeks to utilize sections 547 and 548 of the Bankruptcy Code, and section 513.45 of the Minnesota Statutes to avoid certain transfers. Count I seeks to avoid the Transfers as preferential under section 547 of the Bankruptcy Code. Count VI seeks to avoid the Transfers as fraudulent under section 548 of the Bankruptcy Code. Count IV seeks to avoid the Transfers as fraudulent under section 513.45 of the Minnesota Statutes. The elements for a preferential transfer under the bankruptcy code are set forth in 11 U.S.C. § 547. They are as follows:

> (b)…a trustee may avoid any transfer of *an interest of the debtor in property*—
>     (1) to or for the benefit of a creditor;
>     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>     (3) made while the debtor was insolvent;
>     (4) made—
>         (A) on or within 90 days before the date of the filing of the petition;
>         …
>     (5) that enables such creditor to receive more than such creditor would receive if—
>         (A) the case were a case under chapter 7 of this title;
>         (B) the transfer had not been made; and
>         (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). The elements for a fraudulent transfer as pleaded by the Trustee are set forth in 11 U.S.C. § 548. Under that provision, a bankruptcy trustee:

> May avoid any transfer…of *an interest of the debtor in property*, or any obligation…incurred by the debtor that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder,

5

> delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted

11 U.S.C. § 548(a)(1)(A) (emphasis added). Minnesota state law governing fraudulent transfers to insiders is set forth in section 513.45 of the Minnesota Statutes. Under that section, Minnesota law provides:

> [a] transfer made *by a debtor* is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, *the debtor* was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

MINN. STAT. § 513.45(b) (emphasis added).

The initial question for Counts I, IV, and VI of the Complaint is whether the Transfers were of an interest of the Debtor in property, or transfers made by the Debtor. *E.g., Rine & Rine Auctioneers v. Douglas County Bank and Trust Co. (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 857 (8th Cir. 1996) (noting that the threshold question is whether the property transferred is an interest of the debtor in property); *Ries v. Firstar Bank Milwaukee, N.A. (In re Spring Grove Live Stock Exchange)*; 205 B.R. 149, 161 (Bankr. D. Minn. 1997) (indicating the first element that must be proven under section 548 of the Bankruptcy Code is that the transfer was of an interest of the debtor in property); *Neubauer v. Cloutier*, 122 N.W.2d 623, 627 n.2 (Minn. 1963) (determining that for the then existing Uniform Fraudulent Conveyance Act, a mortgagee was a "creditor" and a mortgagor was a "debtor").

There is a two-step process for determining whether an interest is an "interest of the debtor in property." First, courts look to state law to assess whether the property is an asset of the debtor. *Rine & Rine*, 74 F.3d at 857 ("State law controls questions concerning the nature and extent of the debtor's interest in property."). Second, the Bankruptcy Code dictates the extent to which that interest is property of the estate. *Id*. at 857 – 58. A majority of the Transfers fail to

meet either element.

Of the eight Transfers included in the Complaint, six appear to be transfers of interests other than the Debtor. And the other transfers were well outside the applicable preference period. The six non-debtor transfers include: (i) a mortgage granted by Jacobs Properties of Rogers, LLC, as mortgagor; (ii) a mortgage granted by H & H Realty of Delano, LLC, as mortgagor; (iii) a security interest in the business assets of Rosedale Dodge, Inc. and mortgage on certain real estate; (iv) partial repayment of CB's loan to DEH Funding, LLC; (v) October 2008 payment of an unspecified obligation; and (vi) November 2008 partial payment of corporate obligations (collectively, the "Corporate Transfers").[6] Under Minnesota law, the Corporate Transfers were, if anything, transfers of interests of separate corporations, whose assets do not belong to the Debtor. *E.g.*, *Blohm v. Kelly* 765 N.W.2d 147 (Minn. Ct. App. 2009) ("Corporate assets 'do not belong to the stockholders, but to the corporation.'" (quoting *Seitz v. Michel*, 181 N.W. 102, 105 (Minn. 1921))). Furthermore, the Corporate Transfers were not made by the Debtor. *Neubauer v. Cloutier*, 122 N.W.2d 623, 627 n.2 (Minn. 1963) (determining that for the then existing Uniform Fraudulent Conveyance Act, a mortgagee was a "creditor" and a mortgagor was a "debtor"). The Corporate Transfers therefore do not qualify as a transfer of an interest of the Debtor, or a transfer by the Debtor, under Minnesota law.

Furthermore, none of the Transfers were transfers of an interest qualifying as property of the Debtor's bankruptcy estate. To meet this definition, the Trustee is required to demonstrate the transfer depleted the Debtor's bankruptcy estate. *Brown v. First Nat'l Bank of Little Rock Arkansas*, 748 F.2d 490 (8th Cir. 1984). The Complaint is devoid of any reference that any of the Transfers somehow depleted the Debtor's bankruptcy estate. The reason is simple – the

---

[6] *The Complaint*, 119.

Trustee has no basis to make such an allegation.[7] It should be axiomatic that the Corporate Transfers did nothing to deplete the Debtor's estate. But it is also difficult to understand how taking a security interest in debtor's "assets" had any impact on the Debtor's estate in light of the existing secured creditors' substantial and senior claims. The Complaint fails to allege the Transfers were of an interest of the Debtor under Minnesota law, made by the Debtor, or that the Transfers somehow depleted Debtor's bankruptcy estate. Counts I, IV, and VI of the Complaint are therefore facially implausible and should be dismissed.

### C. Counts I and IV of the Complaint should be Dismissed Because Neither CB nor CHC Qualifies as an Insider of the Debtor.

For any of the Transfers to be avoided as preferential, or fraudulent under Count IV, the Trustee will have to prove CB and CHC are insiders of the Debtor. 11 U.S.C. § 547(b)(4); MINN. STAT. § 513.45(b). The Trustee has not alleged facts sufficient to establish CB and CHC are insiders of the Debtor and is precluded from doing so because neither CB nor CHC has ever controlled Denny Hecker.[8]

For individual debtors, the Bankruptcy Code and Minnesota law define "insider" to include a relative or general partner of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a corporation of which the debtor is an officer, director, or person in control. 11 U.S.C. § 101 (31)(A); MINN. STAT. § 513.41(7). Bankruptcy courts in this jurisdiction have determined that this list is illustrative, not exclusive. *Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798 (B.A.P. 8th Cir. 2006). Two cases provide the additional factors to be considered when making a determination of insider status.

---

[7] Recognizing this inability in at least one instance, the Trustee filed a bankruptcy petition on behalf of Jacob Holdings of Stillwater LLC ("JHS") on June 17, 2009, and commenced an action on behalf of JHS against CB and CHC complaining of the very same transaction involving Rosedale Dodge, Inc., as referenced above. *See* Bky. No. 10-44574, Adv. No. 10-4145.

[8] This fact should be evident based on the myriad fraudulent schemes the Debtor implemented to defraud various creditors.

8

One of the issues on appeal in *Stalnaker* was the relationship between Jerome Rosen (major shareholder in Rosen Auto Leasing, Inc. ("Rosen Auto") and chairman of the board of directors) and George Gratton (one time friend and creditor of Mr. Rosen). *Stalnaker*, 346 B.R. at 801. During the 1990's, Mr. Rosen and Mr. Gratton became close friends, and Mr. Gratton began loaning money to Rosen Auto. *Id*. After a social confrontation between the gentlemen occurred in 1996, their friendship diminished. *Id*. But Mr. Gratton continued to invest money in Rosen Auto. *Id*. In 1999, Mr. Gratton purchased 2,000 non-voting shares in Rosen Auto for $200,000 and loaned Rosen Auto $300,000 pursuant to an unsecured promissory note guaranteed by Mr. Rosen. *Id*. In 2001, Mr. Gratton demanded the unsecured promissory note be paid in full. *Id*. Rosen Auto was unable to satisfy this demand, so Mr. Rosen suggested that Rosen Auto deliver a check to Mr. Gratton, who would in turn endorse the check to Mr. Rosen in exchange for a promissory note from Mr. Rosen equal to the check and secured by a deed of trust on Mr. Rosen's Arizona condominium (the "2002 Transfer"). *Id*. at 801-02. Mr. Gratton agreed. At the time Rosen Auto issued the check to Mr. Gratton in early 2002, it was in precarious financial condition and had insufficient funds to clear the check to Mr. Gratton. *Id*. at 802. Despite having overdraft protection, it is unclear whether the check would have cleared because Mr. Rosen never presented the check for payment. *Id*. By May 2002, Rosen Auto filed for bankruptcy relief, which was followed by Mr. Rosen's personal petition. *Id*. The same trustee was appointed in both cases, and in both cases the trustee filed an adversary complaint against Mr. Gratton seeking to avoid the 2002 Transfer. *Id*. The adversary proceedings were consolidated.

The B.A.P. determined that Mr. Gratton was not an insider of Rosen Auto or Mr. Rosen. In making this determination, the B.A.P. noted that a creditor has to exert control over a debtor

9

before gaining insider status. *Id*. at 804 (quoting *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 625 n. 4 (8th Cir. 1984)). The court went on to state "The ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider." *Id*. The B.A.P. concluded Mr. Gratton's social and lending relationship with Mr. Rosen and Rosen auto did not rise to the requisite level of control.

In similar circumstances a bankruptcy court in the Eighth Circuit reached the same conclusion. At issue in *Fee v. Eccles (In re Eccles)*, 393 B.R. 845 (Bankr. W.D. Mo. 2008) was the relationship between the debtors and their friends, Larry and Brenda Fee. *Id*. at 849. The couples became close friends after a holiday party. *Id*. In fact, Ms. Fee testified "that she and her husband came to feel that the Debtors were 'like our own children.'" *Id*. Sharing a common interest in real estate investing, the Fees decided to assist the debtors in starting a few projects by lending the debtors money to renovate certain properties in anticipation of resale. *Id*. Unfortunately for the Fees, the debtors used the borrowed funds for expenses unrelated to any renovations. *Id*. at 850. The Fees learned how the debtors spent the loan proceeds by monitoring the properties. *Id*. The Fees demanded payment, commenced a lawsuit, and recorded a notice of *lis pendens* on certain real estate owned by the debtors in May 2007. *Id*. The debtors were unable to repay the Fees and filed for bankruptcy relief on September 29, 2007. *Id*.

The debtors' bankruptcy trustee commenced an action against the Fees seeking to avoid the recording of the notice of *lis pendens* as a preferential transfer. *Id*. at 855. To extend the 90-day preference window, the bankruptcy trustee asserted the Fees were "insiders" of the debtors. The court disagreed. In reaching that conclusion, the court noted the ability to compel payment is insufficient control to warrant a finding of insider status. *Id*. at 856. The court also rejected the trustee's claims that close friendship and monitoring use of loan proceeds demonstrated the

Fees were insiders. The court stated "The fact that a creditor and a debtor are friends is insufficient to transform the creditor into an insider; some degree of control or significant influence is necessary." *Id.*

Here, the Trustee fails to allege any facts to warrant a finding that CB or CHC is an insider of the Debtor. The Trustee does not claim CB or CHC is a relative or general partner of the Debtor, a partnership in which the Debtor is a general partner, a general partner of the Debtor, or a corporation of which the Debtor is an officer, director, or person in control. The statutory definition of insider is therefore not met. 11 U.S.C. § 101 (31)(A); MINN. STAT. § 513.41(7). Furthermore, the bulk of the trustee's allegations boil down to a friendship/lending relationship between the Debtor and two members of the board of directors of CB. These allegations are insufficient for four reasons. First, the facts are nearly analogous to *Stalnaker* and *Fee*, from which the courts determined there was no insider relationship. Second, the findings in *Stalnaker* and *Fee* were based on a direct relationship between the debtor and alleged insider. Here, the Complaint unfairly assumes insider status based on the activities of two members of the board of directors, not a majority. This alleged "insider" relationship is therefore an additional step removed from the situations in either *Stalnaker* or *Fee*. Third, it is unclear why CB board members had any impact on lending decisions. According to the testimony of Brent Olson attached to the Complaint "The bank board doesn't deal with loans."[9] Fourth, business friendships are common and necessary. It is normal for business professionals, including bankers, to maintain close relationships with customers and potential customers to attract and retain business. As a result, business professionals and clients interact in a number of venues, including sporting events, hunting/fishing trips, trade associations, and civic organizations. Such

---

[9] *The Complaint*, Ex. B, pg. 14.

11

interaction does not make the business professional an "insider" of the client under the Bankruptcy Code or State law. The Trustee simply fails to allege any facts demonstrating CB or CHC is an insider of the Debtor. Counts I and IV should therefore be dismissed.

### D. Counts VII, VIII, and IX Against CB and CHC Should Be Dismissed

The last three counts of the Complaint seek equitable relief. Consistent with the other counts against CB and CHC, the Trustee fails to allege specific facts warranting the relief sought. These counts in the Complaint should therefore be dismissed.

Count VII of the Complaint seeks to equitably subordinate the claims of CB and CHC. Equitable subordination is governed by section 510 of the Bankruptcy Code. The Bankruptcy Code permits a court to equitably subordinate claims and interests, and order that any lien securing a subordinated claim be transferred to the estate. 11 U.S.C. § 510(c). Courts in this jurisdiction utilize a three-part test to determine whether a claim can be equitably subordinated. The test is as follows: (i) the claimant must have engaged in inequitable or fraudulent conduct, (ii) which resulted in injury to creditors or provided an unfair advantage to claimant, and (iii) equitable subordination must be consistent with other provisions of the Bankruptcy Code. *Kaler v. Bala (In re Racing Services, Inc.)*, 386 B.R. 751, 755 (B.A.P. 8th Cir. 2008) (citations omitted); *Ries v. Firstar Bank Milwaukee, N.A. (In re Spring Grove Live Stock Exchange)*; 205 B.R. 149, 162 (Bankr. D. Minn. 1997) (citations omitted). In *Kaler*, the bankruptcy trustee was seeking to subordinate certain claims based solely on criminal orders. *Kaler*, 386 B.R. at 755. The B.A.P found that once those criminal orders were vacated, there was no basis in fact or law to equitably subordinate the claims. *Id.* In *Reis*, the bankruptcy trustees were seeking to equitably subordinate creditors' claims on the grounds that the creditors' return of kited checks constituted misconduct conferring an unfair advantage on the banks. *Ries*, 205 B.R. at 161. The court disagreed, determining it would be inequitable to punish creditors for attempting to protect

their interest in light of the debtor's fraud. *Id*. at 162-63.

Here, the Complaint makes three allegations in support of the Trustee's request for equitable subordination and disallowance under Counts VII and VIII.[10] First, the Trustee alleges the defendants knowingly procured the Debtor's breach of an agreement with Chrysler. Second, the Trustee asserts the defendants aided and abetted in the concealment of assets. Finally, the Trustee claims the defendants violated the automatic stay. These allegations dot not apply to CB or CHC. Nor do the allegations sufficiently plead fraudulent conduct to support the equitable relief. FED.R.CIV.P. 9(b); FED.R.BANKR.P. 7009. CB was simply attempting to obtain an abundance of collateral in light of Debtor's precarious financial condition. This action by itself does not rise to the level of inequitable conduct justifying an equitable remedy. *See FBN Food Serv., Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996) (finding that a creditor's financial pressure on a guarantor does not equate to fraud). Furthermore, a majority of the Transfers were of interests other than the Debtor. It is therefore impossible for CB to have received an unfair advantage over creditors of the Debtor. In short, this court should not punish CB for attempting to work with Debtor on existing obligations six months prior to his bankruptcy petition. *See Ries v. Firstar Bank Milwaukee, N.A. (In re Spring Grove Live Stock Exchange)*; 205 B.R. 149, 162 (Bankr. D. Minn. 1997); *FBN Food Serv., Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996)  Counts VII and VIII of the Complaint should therefore be dismissed as to CB and CHC.

Count IX of the Complaint seeks declaratory judgment to determine the nature of certain liens held by unnamed defendants. The Trustee does not identify which stock certificates are at issue or which defendant is claiming an interest. The Complaint utterly fails to identify any short and plain statement of facts entitling the Trustee to relief as required by Rule 8 of the Federal

---

[10] *The Complaint*, ¶¶ 163, 167.

Rules of Bankruptcy Procedure. Count IX should therefore be dismissed.

## IV.    <u>CONCLUSION</u>

Dismissal is appropriate when the allegations in the complaint fail to state a claim that is plausible on its face. Here, the plaintiff is seeking to avoid transfers of non-debtors outside the applicable look-back period. These transfers are not avoidable under the Bankruptcy Code. The Trustee's claims against CB and CHC should therefore be dismissed.


Dated: <u>July 21, 2010</u>　　　　　　　　　　　MACKALL, CROUNSE & MOORE, PLC


　　　　　　　　　　　　　　　　　　　　　By <u>/e/ Andrew P. Moratzka</u>
　　　　　　　　　　　　　　　　　　　　　Andrew P. Moratzka (#322131)
　　　　　　　　　　　　　　　　　　　　　1400 AT&T Tower
　　　　　　　　　　　　　　　　　　　　　901 Marquette Ave
　　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　　　　　　(612) 305-1400

　　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR DEFENDANT
　　　　　　　　　　　　　　　　　　　　　CORNERSTONE BANK AND CORNERSTONE
　　　　　　　　　　　　　　　　　　　　　HOLDING COMPANY, INC.


　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　1266138.3-APM

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In re:                                                                                          Bky No. 09-50779

Dennis E. Hecker,                                                                    Chapter 7

        Debtor.

_____

Randall L. Seaver, Trustee,

                                                                                         Adv. No. 10-5022

        Plaintiff,

vs.

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

        Defendants.

**UNSWORN DECLARATION FOR PROOF OF SERVICE**

<u>Jinah E. Finnes</u>, employed by Mackall, Crounse & Moore, PLC, attorney(s) licensed to practice law in this court, with office address of 1400 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402-2859, declares that on the date set forth below, caused the following documents:

**<u>Defendants Cornerstone Bank and Cornerstone Holding Company, Inc.'s Notice of Hearing and Motion to Dismiss; Memorandum of Law in Support of Motion to Dismiss and Proposed Order.</u>**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Matthew R. Burton    mburton@losgs.com, swood@losgs.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

| | |
|---|---|
| Cornerstone Bank<br>2280 45th St S<br>Fargo, ND 58103 | Cornerstone Holding Company, Inc.<br>2280 45th St S<br>Fargo, ND 58103 |
| Richard Olson<br>73 Broadway N<br>Fargo, ND 58102 | Royal Jewelers, Inc.<br>73 Broadway N<br>Fargo, ND 58102 |

Dated: July 21, 2010     Signed: /e/Jinah E. Finnes

1267107.1-JEF

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:                                                                                                  Bky No. 09-50779

Dennis E. Hecker,                                                                          Chapter 7

      Debtor.
_____

Randall L. Seaver, Trustee,

                                                                                                                       Adv. No. 10-5022

      Plaintiff,

vs.

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

      Defendants.
_____

**ORDER REGARDING DEFENDANTS CORNERSTONE BANK AND**
**CORNERSTONE HOLDING COMPANY, INC.'S MOTION TO DISMISS**
_____

      The court heard the Motion to Dismiss by Cornerstone Bank and Cornerstone Holding Company, Inc., on August 18, 2010 at 2:00 p.m. Appearances are noted on record.

      IT IS ORDERED

      1. The Motion to Dismiss is granted.

      2. The claims against Cornerstone Bank and Cornerstone Holding Company, Inc., are dismissed with prejudice.

DATED: _____

                                                                                                            _____
                                                                                                             Robert J. Kressel
                                                                                                             United States Bankruptcy Judge