UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY No.: 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |
| Randall L. Seaver, Trustee, | Adv. No.: 10-5022 |
| Plaintiff, | |
| vs. | |
| Cornerstone Bank, Royal Jewelers, Inc., Cornerstone Holding Company, Inc. and Richard Olson, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

**INTRODUCTION**

Defendants Cornerstone Bank ("**CB**"), Cornerstone Holding Company, Inc. ("**CHC**") and Royal Jewelers, Inc. ("**RJI**") each seek dismissal of the Complaint of the Chapter 7 Trustee, Randall L. Seaver ("**Trustee**") in this matter. Their motions should be denied.

Defendants' arguments are not well-founded, based on the pleadings, nor supported by law. As detailed below, Defendants manufacture their own version of what the Trustee alleges in his Complaint and then attack their own version. The Complaint, however, asserts multiple viable claims for relief which cannot be as casually dismissed as Defendants would like.

Defendants raise three primary arguments in support of their motions to dismiss. Defendants' first argument – that the Complaint fails to adequately allege the transfer of an

interest of the Debtor in property – is demonstrably untenable, as the Complaint unmistakably alleges, among other things, that Hecker transferred to CB all of Hecker's general intangibles. *See* Complaint at 15-16, ¶ 78(e). For its part, CB has relied time and again on this dubious transfer to lay claims to payments coming into the bankruptcy estate. *Id.* at 15, ¶ 76. CB's implausible effort to downplay the import of this transfer misses the mark.

Equally untenable is Defendants' contention that they are not "insiders" of Hecker. As the Complaint alleges in exacting detail, Defendants held so much sway over Hecker that they induced him, in clear violation of an existing Standstill Agreement with Chrysler, to grant security interests in virtually all of his own unencumbered assets and in the remaining unencumbered assets of various entities Hecker owned and controlled. *See* Complaint at 12-15, ¶¶ 58-74. And although a showing of control is not, as Defendants would have this Court believe, necessary to a showing of non-statutory insider status, one need only look to the fact that Hecker executed and delivered agreements to CB, and CB recorded and otherwise took advantage such agreements, in violation of the very agreement with Hecker that led to the restructure. *Id.* at 17, ¶ 80. These facts, plainly alleged in the Complaint, demonstrate that Defendants not only had the ability to control Hecker, but they exercised that control in a manner that improved their positions and diminished the estate.

Defendants' third primary contention, that the Complaint fails to adequately allege the existence of fraudulent or inequitable conduct, suggests a somewhat stunning lack of attention to the details of the Complaint. Among other things, the Complaint specifically alleges that Defendants wrongfully interfered with the Standstill Agreement between Chrysler and Hecker, *see* Complaint at 12-15, ¶¶ 58-74, violated the terms of their own restructuring agreement with Hecker, *id.* at 17, ¶ 80, and made false factual claims in the September 9, 2009 Adversary

Complaint Defendants filed seeking denial of the Debtor's discharge. *Id.* at 19, ¶ 90. These allegations – all of which are predicated upon documentary and other evidence attached to the Complaint – quite clearly suffice to support the Trustee's claims for equitable subordination and disallowance of Defendants' claims. Defendants' motions must therefore be denied.

## ARGUMENT

### I. STANDARD FOR RULE 12(b)(6) MOTION

The standards applicable to a motion to dismiss under Rule 12(b)(6) are well settled. As succinctly stated by the Court in the case of *In re Farmland Industries, Inc.*, 408 B.R. 497 (8th Cir. B.A.P. 2009) (Kressel, CJ):

> Federal Rule of Civil Procedure 8(a)(2), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, requires pleadings that state a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2); Fed. Rules Bankr.Proc. 7008. A complaint which fails to state a claim to relief that is plausible on its face may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6):
>
>> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
>
> *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "[W]e accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf*, 517 F.3d at 549. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft* at 1949. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. On a 12(b)(6) motion, courts are permitted to consider matters of public record. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir.2000). "Where the allegations show on the face of the complaint

> there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, Inc., 524 F.3d 866, 870 (8th Cir.2008).

*Id.*, at 503.

The Trustee has set forth sufficient pleadings, as set forth herein, to defeat the Defendants' motions. Further, in the case of *In re The King's Place, Inc.*, 6 B.R. 305 (Bankr. E.D. Pa. 1980) a defendant brought a Rule 12 motion to dismiss on the issue of "insider." The court noted, "We conclude that under the notice pleading principles of the federal rules, the plaintiff's allegation survives a Rule 12(b)(6) motion. **Whether the defendant was at all pertinent times an "insider" within the meaning of the Code is a matter for the presentation of evidence at trial.**" *Id.*, at 308 (emphasis added).

## II. THE TRUSTEE HAS SUFFICIENTLY ALLEGED THAT THE MOVING DEFENDANTS ARE INSIDERS

The moving Defendants would have the Court believe that the Trustee put little thought into his Complaint and simply alleged that the moving Defendants were insiders on a whim. To the contrary, it was only after an extensive investigation of the moving Defendants that it became clear to the Trustee that the moving Defendants were, in fact, insiders of the Debtor. Their pre- and post-petition conduct – much of which is detailed in the Complaint - evidences the same.

The Trustee in this case has alleged that the defendants, except for Richard Olson (who is a statutory insider) are nonstatutory insiders. The Defendants, moreover, concede that the Bankruptcy Code Section 101(31)'s specific delineation of insiders is not exclusive. As Judge Dreher held in the case of *In re Dygert*, 2000 WL 630833 (Bankr. D. Minn. 2000):

> [T]he definition of insider is preceded by the term "includes." Thus, the list of examples of insiders is meant to be illustrative, not exhaustive. 11 U.S.C. 102(3); *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996); *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 348 (Bankr. E.D. Mich. 1999). The legislative history suggests that, in addition to the individuals and entities actually named, **the term also encompasses anyone with "a sufficiently close relationship with the debtor that his conduct is made subject to**

> **closer scrutiny than those dealing at arm's length with the debtor**." *Krehl*, 86 F.3d at 741 (quoting S. Rep. No. 95-989, reprinted in 1978 U.S.C.C.A.N. 5787, 5810); *Barman*, 237 B.R. at 348 (quoting *Jahn v. Economy Leasing, Inc. (In re Henderson)*, 96 B.R. 820, 824-25 (Bankr. E.D. Tenn. 1989)). In ascertaining insider status, courts look to the closeness of the relationship between the parties and whether any transactions between them could be considered "arm's length." *Krehl*, 86 F.3d at 742.

*Id.,* at *7 (emphasis supplied). (with Judge Dreher noting, "Due to all of these relationships, any transaction that may have taken place between Dygert and OCC would have been subject to close scrutiny.") (emphasis added).

Courts considering claims of non-statutory insider status generally focus both on the nature of the relationship and the conduct of the parties in relation to the challenged transaction. *Id.* Although a close relationship must exist, courts have generally eschewed an analysis which would require a showing that the putative insider exercised "actual control" over the debtor. In that regard, the bankruptcy court in *In re Miller Homes,* 2009 WL 4330267 (Bankr. D. N.J. 2009) held as follows:

> To determine whether the defendant qualifies as a non-statutory insider requires consideration of both the nature of the relationship between the parties and whether the transaction in question was conducted at arm's length. See *In re Lopresti*, No. 03-48839, 2006 WL 2708605, *6 (Bankr. D. N.J. Sept. 20, 2006). "In determining the closeness of the relationship, courts have found the essential question is 'the degree to which the transferee is able to exert control or influence over the debtor.' " *In re Hill*, 342 B.R. 183, 199 (Bankr. D. N.J. 2006) (quoting *In re Dupuis*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001)). **Although actual control does not have to be shown**, *In re Winstar Communs.*, Inc., 554 F.3d 382, 396 (3d Cir.2009), there must be something more than "the mere existence of a friendship." *Lopresti*, 2006 WL 2708605 at *7. See also *In re U.S. Medical, Inc*., 531 F.3d at 1278 ("more than mere closeness is necessary for a court to hold that a creditor was a non-statutory insider of a debtor").

*Id.*, at 7 (emphasis supplied). Other courts have similarly rejected the "actual control" standard for purposes of evaluating non-statutory insider status. *See In re Winstar Communications, Inc*., 554 F.3d 382 (3rd Cir. 2009) (a finding of such control is not necessary for an entity to be a non-statutory insider); *In re U.S. Medical, Inc..*, 531 F.3d 1272, 1279 (10th Cir. 2008)) ("A finding of actual control by the bankruptcy court would make Creditor a statutory insider and would

<br>

avoid the question of whether it was a non-statutory insider altogether. Obviously, then, a bankruptcy court does not have to find actual control of the debtor by the creditor before ruling that the creditor is a non-statutory insider of the debtor."). As such, control is not, as Defendants would have this Court rule, the sole consideration.

The cases Defendants cite in an effort to defeat the Trustee's insider claims are not on point and should give this court no pause in denying the motions. In *Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798 (8th Cir. B.A.P. 2006), for example, the bankruptcy court found – *after conducting a trial* – that the relationship between the debtor and the alleged insider had "soured years before the transactions in dispute had occurred" and that relationship at the time of the challenged transfers was nothing more than a "debtor-creditor" relationship. *Id.* at 804.

Equally unavailing is Defendants' attempted reliance upon *Fee v. Eccles (In re Eccles)*, 393 B.R. 845 (Bankr. W.D. Mo. 2008). In *Fee*, the bankruptcy trustee sought to avoid the pre-petition recording of a notice of *lis pendens* more than ninety days before the filing of the bankruptcy case. The recording occurred in the aftermath of the Fee's discovery that the debtor had misapplied loan proceeds for purposes other than their intended use. *Id.* at 849-50. *Following a trial*, the bankruptcy court noted that "the evidence adduced at trial fell far short of establishing an insider relationship." *Id.* at 856. Rejecting the Trustee's argument that the parties' friendship, without more, compelled a finding of insider status, the bankruptcy court noted that a showing of "some sort of control **or significant influence is necessary."** *Id.* (emphasis supplied).

It is important to note that in both *Stalnaker* and *Fee*, the bankruptcy court ruled on the question of non-statutory insider status only *after* a trial. Moreover, the allegations pertaining to

6

insider status in this case amount to far more than a claim of a past "soured" friendship or a conventional "debtor-creditor relationship." Rather, a fair reading of the Complaint and the exhibits attached to the Complaint demonstrate that the Trustee in this case has more than adequately alleged facts to support the claim that Defendants are insiders of Hecker.

As an initial matter, the Complaint sets forth facts which amply demonstrate not only that the Defendants possessed "some sort of control or significant influence" over Hecker, but that Defendants actually exercised their influence and control. As noted above, the Debtor and these Defendants had a symbiotic relationship. Richard Olson, one of the owners of CB, testified that he "loved" the Debtor "like a brother." It was this relationship which, according to CB's own files, led CB to make improvident loans to Hecker.

When CB realized that it was going to suffer significant losses and, perhaps be shut down as a result of these improvident loans, the bank, using the "brotherly" and "loving" relationship that existed between the Olsons and Hecker began to use that close relationship to influence and induce Hecker to better the position of the bank, at the expense of other creditors of Hecker.

As can be seen in the series of e-mails attached as exhibits to the Complaint, the use by the bank of the Olsons' influence over Hecker to better the Bank's position was unrelenting and unequivocal. The Olsons, on behalf of the bank, "begged" Hecker to save the bank. *See* Complaint, Ex. A-4. The Olsons affirmed to Hecker their "brotherly" relationship.[1]

---

[1] The Trustee's Complaint sets forth a litany of additional allegations which support the finding that Defendants are insiders of the Debtor. Among other things, the Complaint alleges: (1) the Olsons, longtime friends of the Debtor, were key figures with CB, CHC and Royal Jewelers, as well as Debtor's partner in a business venture; (2) when CB could not reach the Debtor, and knowing he was in crisis mode, CB brought in the Olsons to pressure the Debtor; (3) the Olsons pressured the Debtor to give CB additional collateral, because without additional collateral, CB could have failed, and the Olsons would have lost their investment in CB and in Royal Jewelers; (4) Royal Jewelers continued to provide Debtor jewelry, on credit, even after the Debtor's bankruptcy filing; (5) Royal Jewelers and Richard Olson accepted watches and jewelry from the Debtor, which were property of the bankruptcy

7

And the bank's endeavor to use the Olsons to influence Hecker was unquestionably successful. The bank bettered its position at the expense of all creditors. Once it had done so, the bank, in pleadings before this court, sought to distance itself fromn Hecker, stating, by way of example, at Paragraph 29 of the Complaint in Adv. No. 09-5035, that Hecker had "tricked" CB into making a loan to Jacob Holdings of Stillwater, LLC in December 2008. In fact, however, there was no new loan made to that entity and far from Hecker "tricking the bank," the bank, through their emissaries the Olsons, had induced Hecker – in violation of his Standstill Agreement with Chrysler – to transfer property of Jacob Holdings of Stillwater, LLC to the bank for no consideration.

Further, to the extent allegations of actual control may be necessary, the Complaint quite clearly contains such allegations. Among other things, the Complaint alleges after the Olsons exercised their substantial influence to induce Hecker to provide CB with signed instruments granting the bank additional collateral, the bank moved forward to attempt to perfect its interests without having performed reciprocal promises it had made to Hecker. Further evidence of Defendants' ability to influence and control Hecker is the fact, alleged in the Complaint, that Hecker and his counsel accepted service of complaints to foreclose on the collateral the bank had grabbed, failed to notify the trustee, and were poised to allow litigation involving that collateral to go by default in CB's favor.

---

estate, even after being examined by the Trustee's counsel about the Debtor's assets; (6) Hecker caused his entities to grant mortgages to CB without CB having to commence litigation – they just asked. *See* Complaint.

The Complaint more than adequately alleges that the Defendants are non-statutory insiders. This court should therefore deny Defendants' motions to dismiss.

### III. AVOIDANCE CLAIMS

The Trustee's Complaint does contain allegations that certain assets were transferred to CB and CHC which were not titled in the Debtor's personal name. For instance, the Debtor transferred his equity in the Delano venture to CB and CHC (for which defendants subsequently obtained value). The Trustee is willing to dismiss the claims seeking to avoid the claims for recovery based on non-debtor transfers. The Trustee could have sought to amend that Complaint to allege alter ego claims in this case. The amount at stake from the non-debtor transfers, however, does not merit such an undertaking.[2]

The Trustee is not inclined to dismiss any other claims. CB and CHC leap to the conclusion that, "As pleaded in the Complaint, the four remaining loans were for legitimate business purposes." There is no such acknowledgment in the Complaint. Further, even without alleging alter ego, the evidence will show that DEH Funding LLC and the Debtor were one for purposes of their bank records. Debtor had unfettered access to that account and paid volumes of personal items from the DEH Funding accounts.

CB and CHC lose a lot of credibility when they allege, "it is difficult to understand how taking a security interest in debtor's 'assets' had any impact on the Debtor's estate in light of the existing secured creditors' substantial and senior claims." Memo at 8. Given the history of CB and CHC in this case, the statement is preposterous. For instance, based on the lien that CB

---

[2] It is more than a little bit ironic that – despite their steadfast reliance upon the putative corporate veil of Hecker's entities in challenging the Trustee's avoidance of the various liens and interests obtained by CB and CHC as part of their pre-petition collateral grab in this case – CB and CHC have advanced, as their sole defense to the avoidance claim asserted by the Trustee in the matter of *Sullivan v. Cornerstone Bank, et al.*, Adv. No. 10-4145, that the Hecker entity involved there, Jacob Holdings of Stillwater, LLC, is the alter ego of the Debtor.

9

obtained in the Debtor's personal assets, including general intangibles, CB and CHC are making claim to: (a) the $425,000+ that the Trustee recovered as a preference from the sale of Brainerd Toyota (and the matter is on appeal to the District Court) (Docket item 317); (b) the proceeds of the Shady Roost Lodge sale (Docket item 416); (c) tax refunds, and (d) other estate assets. In short, based on its claim possessing a security interest in general intangibles, which counsel now calls worthless, CB and CHC are tying up hundreds of thousands of dollars in assets which would otherwise be clearly property of the estate.

## IV. PLEADING OF EQUITABLE SUBORDINATION

The moving defendants ask the Court to dismiss the Trustee's claims under 11 U.S.C. §510(c) based on the form of pleading. The Trustee has sufficiently plead equitable subordination and this is supported by the Eighth Circuit in the case of *Sparks v. England*, 113 F.2d 579 (8th Cir. 1940) which held that:

> The Rules of Civil Procedure do not require that a plaintiff shall plead every fact essential to his right to recover the amount which he claims. The requirement is, 'a short and plain statement of the claim showing that the pleader is entitled to relief, 'and 'a demand for judgment for the relief to which he deems himself entitled.' Rule 8(a)(2) and (3), 28 U.S.C.A. following §723(c). The appendix of forms accompanying the rules illustrates how simply a claim may be pleaded and with how few factual averments. This Court has consistently disapproved of the practice of terminating litigation, believed to be without merit, by the dismissal of complaints for informality or insufficiency of statement. See *Leimer v. State Mutual Life Assurance Co.*, 8 Cir., 108 F.2d 302, 305. **If it is conceivable that, a plaintiff can, upon a trial, establish a case which would entitle him to the relief prayed for, a motion to dismiss for insufficiency of statement ought not to be granted**. See and compare *Donnelly Garment Co. v. International Ladies' Garment Workers' Union*, 8 Cir., 99 F.2d 309, 312; *Leimer v. State Mutual Life Assurance Co.*, supra.

*Id.*, at 581-82 (emphasis added).

The moving Defendants' citation of the case of *In re Racing Services, Inc.*, 386 B.R. 751 (8th Cir. B.A.P. 2008) is not compelling. In that case, subordination was based on criminal orders which were subsequently vacated. The case does set forth the standard for equitable

10

subordination. *Id.*, at 755. However, the conduct described in this case is worlds different than that in *Racing Services*.

As noted above, the Complaint specifically alleges that Defendants wrongfully interfered with the Standstill Agreement between Chrysler and Hecker, <u>see</u> Complaint at 12-15, ¶¶ 58-74, violated the terms of their own restructuring agreement with Hecker, *id.* at 17, ¶ 80, and made false factual claims in the September 9, 2009 Adversary Complaint Defendants filed seeking denial of the Debtor's discharge. *Id.* at 19, ¶ 90. Certain of the Defendants also aided and abetted the concealment of assets of the estate and violated the automatic stay. These allegations more than sufficiently allege fraudulent or inequitable conduct, injury to creditors and unfair advantage to the Defendants, and subordination or disallowance of Defendants claims is wholly consistent with the Bankruptcy Code. *Cf. Racing Services*, 383 B.R. at 755. The Trustee has sufficiently pled his claim and expects to prove a case for equitable subordination at trial or before.

## CONCLUSION

For the reasons detailed herein, aside from dismissing the claims seeking to recover transfers of Hecker entities, as opposed to those directly involving the Debtor, the moving Defendants' motion should be denied.

|  | **LEONARD, O'BRIEN** |
|---|---|
|  | **SPENCER, GALE & SAYRE, LTD.** |
|  | /e/ Matthew R. Burton |
| Dated: August 13, 2010 | By:_____ |
|  | Matthew R. Burton, #210018 |
|  | 100 South Fifth Street, Suite 2500 |
|  | Minneapolis, Minnesota 55402 |
|  | Telephone: (612) 332-1030 |
|  | Facsimile: (612) 332-2740 |
|  | ATTORNEYS FOR PLAINTIFF |

425200

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

_____

In re: | BKY No.: 09-50779

Dennis E. Hecker, | Chapter 7

      Debtor.

_____

Randall L. Seaver, Trustee, | Adv. No.: 10-5022

      Plaintiff,

vs.

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

      Defendants.

_____

## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I caused the following documents:

> ***Trustee's Memorandum in Opposition to Defendants' Motions to Dismiss and Order (proposed)***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

Dated: August 13, 2010

    /e/ Stephanie Wood
_____
Stephanie Wood
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030

426317

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY No.: 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |
| Randall L. Seaver, Trustee, | Adv. No.: 10-5022 |
| Plaintiff, | |
| vs. | |
| Cornerstone Bank, Royal Jewelers, Inc., Cornerstone Holding Company, Inc. and Richard Olson, | |
| Defendants. | |

**ORDER**

This case is before the court on the motion of defendants Cornerstone Bank, Cornerstone Holding Company, Inc. and Royal Jewelers, Inc. seeking dismissal of the complaint.

Based on the motion and the file,

IT IS ORDERED:

1. The defendants' motion is denied except that the non-debtor avoidance claims alleged in the Complaint are dismissed as to the bankruptcy estate.

Dated: _____

_____
United States Bankruptcy Court Judge

426305