UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| In re: | Bky No. 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |
| _____ | |
| Randall L. Seaver, Trustee, | |
| | Adv. No. 10-5022 |
| Plaintiff, | |
| vs. | **DEFENDANTS CORNERSTONE BANK AND CORNERSTONE HOLDING COMPANY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Cornerstone Bank, Royal Jewelers, Inc., Cornerstone Holding Company, Inc. and Richard Olson, | |
| Defendants. | |

_____

## I. INTRODUCTION

A complaint should be dismissed if it fails to state a plausible claim on its face. The Trustee's memorandum in opposition to defendants' motion to dismiss demonstrates his claims against Cornerstone Bank and Cornerstone Holding Company, Inc. are implausible for three reasons. First, Trustee concedes that he (i) has no standing to avoid transfers from non-debtor entities and (ii) failed to plead the non-debtor entities were the alter ego of Debtor. Second, despite conducting extensive investigations over a one-year period to develop his case, the Trustee is unable to set forth the allegations necessary to establish either Cornerstone Bank or Cornerstone Holding Company, Inc. is an insider of Debtor. Third, the Trustee failed to state his

1

claim for equitable subordination with the requisite particularity or consistent with the attachments to his complaint. This court should therefore dismiss all claims against Cornerstone Bank and Cornerstone Holding Company, Inc.

## II. FACTS

The particular transfers the Trustee complains of include the following (the "Transfers"):

- Security interest in entities in which Debtor was involved in January 2009;
- A mortgage granted by Jacobs Properties of Rogers, LLC, as mortgagor;
- A mortgage granted by H & H Realty of Delano, LLC, as mortgagor;
- A security interest in the business assets of Rosedale Dodge, Inc.;
- Partial repayment of DEH Funding, LLC's, obligation to CB;
- Payment in October of 2008 on an unspecified obligation;
- Payment in November 2008 of what appear to be obligations of corporate entities; and
- A security interest in Debtor's assets.

*The Complaint*, ¶ 119. In his memorandum (the "Response") responding to the motion to dismiss (the "Motion") of defendants Cornerstone Bank ("CB") and Cornerstone Holding Company, Inc. ("CHC") (collectively, "Cornerstone"), the Trustee admits he "is willing to dismiss the claims seeking to avoid the claims for recovery based on non-debtor transfers." *The Response*, pg. 9. The only claims remaining from the list above are the first and last.[1] But the Response lacks any legal justification to overcome his deficient pleading and withstand dismissal of those claims. Furthermore, the Complaint lacks the specific facts justifying any finding of

---

[1] Although not entirely clear, the Trustee appears to believe he is still entitled to avoid the alleged transfer from DEH Funding LLC on grounds that the Debtor and the entity were alter egos of each other. The Complaint does not contain an alter ego allegation, which the Trustee admits in his response. *The Response*, pg. 9.

fraud to support his equitable subordination claim. The claims in the Complaint against Cornerstone should therefore be dismissed.

## III. ANALYSIS

### A. Trustee Failed to Sufficiently Plead Cornerstone was an Insider of the Debtor

The Complaint does not allege either CB or CHC falls within the statutory definition of an insider of the Debtor. Instead, the Complaint alleges there was a business friendship and lending relationship between two board members of CB and the Debtor, which the Trustee believes is sufficient to warrant a finding by this Court that Cornerstone is a "non-statutory" insider of the Debtor. The unpublished opinions cited in the Response do not support his position. To the contrary, the Trustee's authority demonstrates a lender must be involved in managerial or day-to-day decisions of a debtor to be considered an insider for purposes of an avoidance action.

The most important aspects of Judge Dreher's opinion in *Meyer v. Dygert (In re Dygert)*, 2000 WL 630833 (Bankr. D. Minn. 2000) are excluded from the Response. There, the relationship between Organic Conversion Corporation ("OCC") and Dygert (the debtor) were much more extensive than the present situation. The undisputed facts were that Dygert was one of the incorporators of OCC, belonged to the group that later bought OCC, and served as corporate secretary, a member of the board, and corporate attorney. *Id*. at *1. And in support of her finding of insider status, the Judge further acknowledged:

> Dygert's wife, son, and son-in-law owned 100% of [OCC] stock. Dygert's son-in-law and grandson managed the business as the corporate officers. Dygert himself held a key position as the principal fund raiser for the corporation. In that role he was intimately familiar with the finances of the business and made recommendations to the management about how much money to raise and from whom.

3

*Id*. at *8.  In other words, the Judge based her decision of insider status on a prolonged level of intimate involvement and control in the debtor's daily business operations.

The Response also fails to include the pertinent facts from *Stanger v. Miller (In re Miller Homes, LLC)*, 2009 WL 4430267 (Bankr. D.N.J. 2009).  There, the issue involved the relationship between the debtor and its attorney, George Miller.  *Id*. at *1.  The debtor and its principals agreed to borrow money from Mr. Miller, and Mr. Miller drafted the appropriate paperwork but did not request the debtor to execute a conflict waiver in accordance with rules of professional conduct.  *Id*. at *1, 8.  As security for the loan, the debtor granted a mortgage to Mr. Miller.  *Id*. at *2.  The trustee in *Miller* sought to avoid the mortgage, claiming the absence of a written waiver demonstrated the transaction was not arms length.  *Id*. at *8.  The court denied the request.  In so doing, the court noted that "'not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship.'" *Id*. at *7 (quoting *In re Friedman*, 126 B.R. 63, 70 (9th Cir. B.A.P. 1991) (finding the lenders were not insiders even where they spoke with the debtor three time a day and had signatory rights on the debtor's accounts)).  The focus for the court was whether the terms were reasonable and whether each party acted in its own independent interest.  *Id*. at *8.

Both of these unpublished opinions support the authority cited in the Motion that the lender must control or significantly influence the debtor.  *Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798 (B.A.P. 8th Cir. 2006); *Fee v. Eccles (In re Eccles)*, 393 B.R. 845 (Bankr. W.D.Mo. 2008).  There is no authority to support the Trustee's position that a creditor's use of a business relationship to coerce payments from a debtor warrants a finding that the creditor is an insider of the debtor.  As alluded to by the court in *Dygert*, a creditor's influence must extend to day-to-day business decisions of the debtor.

4

For example, in *Meeks v. Rison (In re Armstrong)*, 231 B.R. 746 (Bankr. E.D.Ark. 1999) the court granted the lender's summary judgment motion and dismissed the trustee's insider preference claims. There, the trustee alleged the lender facilitated the debtor's ability to operate a ponzi scheme and exerted control over the debtor by determining how checks and deposits were handled. *Id*. at 748. The court in *In re Armstrong* started its analysis by noting the general rule that "the Courts have been reluctant to construe financial oversight-even intrusive oversight-as the control required to impose insider status." *Id*. at 749. The court went on to emphasize there must be an ability to make management decisions – a close relationship with an officer or director of the bank is insufficient. The court stated

> In determining whether a creditor, and particularly a bank, has the requisite level of control to be an insider, the courts examine whether the creditor had more ability to assert control than the other creditors, whether the creditor made management decisions for the debtor, directed work performance, and directed payment of the debtor's expenses. *ABC Elec. Serv. Inc. v. Rondout Elec., Inc. (In re ABC Elec. Serv. Inc.)*, 190 B.R. 672 (Bankr. M.D.Fla. 1995). **There must be day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a direct stake.** Thus, reliance on the debtor, a liberal loan policy, and accepting the debtor's projections at face value will not render the bank an insider. *Tinsley & Groom v. W. Ky Production Credit Assoc. (In re Tinsely & Groom)*, 49 B.R. 85 (Bankr. W.D.Ky. 1984)…**A close relationship with an officer or director of the bank is also insufficient to render the bank an insider.** *Burner v. Security State Bank (In re Burner)*, 109 B.R. 216 (Bankr. W.D.Tex. 1989).

*Id*. at 749-50 (emphasis added). The court concluded the facts that the debtor wrote the checks, determined his daily expenses, and the bank's knowledge of the debtor's check-kiting, all while placing the debtor on good fund policy, did not rise to the requisite level of control to find the bank was an insider of the debtor. *Id*. at 750.

*In re Tinsley & Groom* and *In re Burner*, cases cited by the court in *In re Armstrong*, are

similarly instructive. In *In re Tinsley & Groom*, the court refrained from concluding the lender was an insider, despite the lender's liberal lending policy, which accepted at face value all of the debtors' projections and relied heavily on the character of the debtors. *In re Tinsley & Groom*, 49 B.R. at 91. In *In re Burner*, the court concluded the bank was not an insider of the debtor despite the fact that the debtor and president of the bank had such a long standing relationship that the bank president was co-executor of the debtor's estate. *In re Burner*, 109 B.R. at 226-27. In making this determination, the court stated that the "control element necessary to qualify a bank as an insider must be such that the debtor was the mere alter ego or instrumentality of the bank, in that the bank was exercising such control and influence over the debtor that their transactions were not at arm's length." *Id.* at 226. The court also emphasized that a close personal relationship between the bank president and the debtor does not mandate a finding of insider status where all pertinent documents were executed on the advice of counsel. *Id.* at 227.

In the Response, the Trustee's acknowledges he conducted "extensive investigation of the Moving Defendants," which included examinations under Rule 2004 of the Federal Rules of Bankruptcy Procedure. *The Response*, pg. 4; *The Complaint*, Ex. B. Despite this "extensive investigation," the Trustee is unable to allege any facts that could justify a finding that either CB or CHC was an insider of the Debtor. The Complaint does not allege that CB or CHC served on the board of an entity owned or controlled by the Debtor, or that the Debtor served as a board member of CB or CHC. The Complaint does not allege CB or CHC owned any stock in any entity owned or controlled by the Debtor, or that the Debtor owned stock in CB or CHC. The Complaint does not allege CB or CHC made any day-to-day management decisions of the Debtor or an entity controlled by the Debtor, or that the Debtor was involved in any such decisions at CB or CHC. Accepting the allegations in the Complaint as true, the Complaint

6

merely establishes that Debtor was friends with a couple of CB board members and worked with Cornerstone to restructure his business and personal debt with the intimate involvement his attorney Erik Dove. *The Complaint*, Ex. A; *The Response*, pg. 7 n.1. Applying the facts alleged in the Complaint to the law cited above and in the Motion demonstrates the Trustee has not and cannot plead either CB or CHC was an insider of the Debtor. Dismissal is appropriate when the complaint's allegations cannot be construed to meet the definition of an "insider." *See In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bankr. S.D.N.Y. 1982). The Motion should therefore be granted.

### B. The Trustee Failed to Adequately Plead a Claim for Equitable Subordination.

In defense of his deficient pleading of equitable subordination, the Trustee relies on a 70 year-old case involving the alleged unlawful entry upon a burial lot. *The Response*, pg. 10 (quoting *Sparks v. England*, 113 F.2d 579 (8th Cir. 1940)). The Response then refers to allegations in the Complaint that are inconsistent with the attachments to the Complaint. The Trustee's arguments should be rejected based on the authority he concedes is applicable.

The pleading standards have changed since 1940. As set forth in the Motion, and quoted by the Trustee, the tenet that a court accepts all allegations in a complaint as true is inapplicable to legal conclusions. *GAF Holdings, Inc. v. Rinaldi et al. (In re Farmland Indus., Inc.)*, 408 B.R. 497, 503 (B.A.P. 8th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). And if the court can only infer from the allegations the mere possibility of misconduct, dismissal is appropriate. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft*, 129 S.Ct at 1950).

With respect to this particular claim, courts have noted "[e]quitable subordination is a harsh remedy that is not to be lightly invoked." *In re Tinsley & Groom*, 49 B.R. 85, 90. For non-insiders, the level of misconduct necessary for subordination is "gross misconduct

tantamount to fraud, misrepresentation, overreaching or spoliation." *In re Burner*, 109 B.R. 216, 228 (citing *In re Osborne*, 42 B.R. 988, 996 (W.D. Wisc. 1984); *Pinetree Partners, Ltd. v. OTR (In re Pinetree Partners, Ltd.)*, 87 B.R. 481, 488 (Bankr. N.D.Ohio 1988)). The Trustee has not set forth in his complaint the level of particularity required to establish such fraud.

In the Response, the Trustee alleges Cornerstone deliberately interfered with a standstill agreement involving Chrysler, and then relies upon two legal conclusions (violation of the restructuring agreement the Trustee is seeking to avoid and fraud) to justify his claim for equitable subordination. The Complaint demonstrates these allegations are untrue for three reasons. First, the trustee attached to the Complaint an email to from a Cornerstone representative to the Debtor and his attorney stating "I am confident that we can structure something with the Toyota stores that will not violate your agreement with Chrysler." *The Complaint*, Ex. A. It is therefore unclear where the deliberate interference or inequitable conduct occurred. Second, the Complaint contains an acknowledgement that the parties finalized the terms of the restructuring agreement. *The Complaint*, ¶ 80, n. 3. Third, the fraudulent allegation relate to concealment of assets, which involves allegations against other defendants to this litigation, not CB or CHC. In any event, the allegations are insufficient under applicable pleading standards because they lack the requisite particularity. The Trustee's arguments in favor of retaining his baseless equitable subordination claim should therefore be rejected. *In re Farmland Indust.*, 408 B.R. 503; FED.R.CIV.P. 9(b); FED.R.BANKR.P. 7009.

## IV. CONCLUSION

Dismissal is appropriate when the allegations in the complaint fail to state a claim that is plausible on its face. Here, the Trustee is relying on inflammatory language in the Complaint to support legally deficient claims. The Response fails to cite any authority or factual allegations in the Complaint to support denial of the Motion. The Trustee's claims against CB and CHC should therefore be dismissed.

Dated: August 17, 2010                MACKALL, CROUNSE & MOORE, PLC


By /e/ Andrew P. Moratzka
Andrew P. Moratzka (#322131)
1400 AT&T Tower
901 Marquette Ave
Minneapolis, MN 55402
(612) 305-1400

ATTORNEYS FOR DEFENDANT
CORNERSTONE BANK AND CORNERSTONE
HOLDING COMPANY, INC.

1277898.2-APM

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

___

In re:                                                                                                         Bky No. 09-50779

Dennis E. Hecker,                                                                        Chapter 7

             Debtor.

___

Randall L. Seaver, Trustee,

                                                                                                  Adv. No. 10-5022

             Plaintiff,

vs.

Cornerstone Bank, Royal Jewelers, Inc.,
Cornerstone Holding Company, Inc. and
Richard Olson,

             Defendants.

___

## UNSWORN DECLARATION FOR PROOF OF SERVICE
___

<u>Lorraine D. Jacobson</u>, employed by Mackall, Crounse & Moore, PLC, attorney(s) licensed to practice law in this court, with office address of 1400 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402-2859, declares that on the date set forth below, caused the following documents:

### **<u>DEFENDANTS CORNERSTONE BANK AND CORNERSTONE HOLDING COMPANY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Jon R. Brakke     jbrakke@vogellaw.com, jnona@vogellaw.com;dstelljes@vogellaw.com;mschumacher@vogellaw.com;sthompson@vogellaw.com
- Matthew R. Burton     mburton@losgs.com, swood@losgs.com
- Andrew Paul Moratzka     apm@mcmlaw.com, jef@mcmlaw.com;ldj@mcmlaw.com

- Brad A Sinclair    bsinclair@serklandlaw.com, lhallsten@serklandlaw.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

| | |
|---|---|
| Cornerstone Bank<br>2280 45th St S<br>Fargo, ND 58103 | Cornerstone Holding Company, Inc.<br>2280 45th St S<br>Fargo, ND 58103 |
| Richard Olson<br>73 Broadway N<br>Fargo, ND 58102 | Royal Jewelers, Inc.<br>73 Broadway N<br>Fargo, ND 58102 |

Dated: August 17, 2010                        Signed: /e/Lorraine D. Jacobson

1278672.1-LDJ